# Exhibit E

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   UNITED STATES OF AMERICA,
 4              v.                                14 CR 460 (LGS)
 5   BNP PARIBAS S.A.,
 6              Defendant.
 7   ------------------------------x
 8                                                New York, N.Y.
                                                  May 1, 2015
 9                                                11:00 a.m.
10
     Before:
11
                     HON. LORNA G. SCHOFIELD,
12
                                         District Judge
13
14                         APPEARANCES
15
     PREET BHARARA,
16        United States Attorney for the
          Southern District of New York
17   ANDREW D. GOLDSTEIN
     MARTIN BELL
18        Assistant United States Attorney
19   SULLIVAN & CROMWELL LLP
          Attorneys for Defendant
20   KAREN PATTON SEYMOUR
     MAURA EILEEN MILLER
21
     ALSO PRESENT:
22
     JENNIFER ELIZABETH AMBUEHL, U.S. Department of Justice
23
24
25
```

1            THE DEPUTY CLERK:  The Honorable Lorna G. Schofield
2    presiding in the matter of United States of America versus
3    BNP Paribas S.A.
4            Counsel, please state your names for the record.
5    Everyone else please be seated.
6            MR. GOLDSTEIN:  Good morning, Judge Schofield.  Andrew
7    Goldstein, for the government.  With me at counsel table is my
8    colleague, Jennifer Ambuehl, from the Department of Justice
9    Asset Forfeiture and Money Laundering Section, and Martin Bell,
10   from our office.
11           THE COURT:  Good morning.
12           MS. SEYMOUR:  Good afternoon, your Honor.  It's Karen
13   Seymour, from Sullivan & Cromwell, here with my colleague Maura
14   Miller, also from Sullivan & Cromwell, and we are accompanied
15   by Georges Dirani, the general counsel of BNP Paribas.
16           THE COURT:  Good morning.  You may be seated.
17           MS. SEYMOUR:  Good morning, your Honor.
18           THE COURT:  We are here today to impose sentence in
19   the case of United States verse BNP Paribas S.A.  I will refer
20   to that entity as BNPP or "the defendant."  I want to make a
21   brief statement before I do that because I understand that some
22   of you in court today had wanted to make some kind of
23   application but have not filed an application, and those
24   matters concern your having been injured by and have judgments
25   against the states or some of the states with which BNPP was

1  illegally carrying out forbidden transactions, namely, Sudan,
2  Iran and Cuba.  Your presence in the room emphatically reminds
3  BNPP and other banks contemplating similar conduct of the pain
4  and suffering states they illicitly transacted with can
5  inflict, and your being here also illustrates why the United
6  States imposes sanctions on the states in the first place.
7           The question, however, is whether you may intervene in
8  this action.  And to quote a statement from Chief Justice John
9  Marshall, in the year 1825, "Whatever might be the answer of a
10 moralist to this question, a jurist must search for its legal
11 solution."
12          So as a jurist, meaning as a judge, I am required to
13 apply the law; and under the law, any such persons may not
14 intervene in this action.
15          In this proceeding, I will sentence BNPP for its
16 conduct, and a money judgment will be deposited with the
17 government.  The money judgment represents the amount of
18 proceeds traceable to BNPP's illegal transactions with Sudan,
19 Iran and Cuba.  To be clear, Sudan, Iran and Cuba do not own
20 the money that BNPP will deposit with the government; and,
21 therefore, you may not enforce any judgment against those
22 states from the money judgment in this case, at least not in
23 this proceeding.
24          I understand that the government retains discretion to
25 distribute those proceeds, from the money judgment here, to

1    terror victims under appropriate circumstances.  Therefore,
2    although you may not intervene in this court, you may have
3    other means to seek relief from the government after
4    sentencing.
5            So let me move on to the sentencing itself.
6            BNPP pleaded guilty to conspiracy to violate the
7    Emergency Economic Powers Act and the Trading With The Enemy
8    Act pursuant to a plea agreement dated June 27, 2014.  I have
9    received and reviewed the government's submission filed
10   April 24, 2014.  Thank you, Ms. Seymour.
11           I have also reviewed the parties' plea agreement, the
12   statement of facts, and the information.
13           Defendant waived the issuance of a presentence
14   investigation report, so there is none.
15           Are there any additional submissions in connection
16   with the sentencing or anything else that I should have
17   reviewed?
18           Mr. Goldstein?
19           MR. GOLDSTEIN:  I think you said it was submitted by
20   Ms. Seymour but it was from the government.
21           THE COURT:  I'm sorry, it was the government's
22   submission.  Thank you, Mr. Goldstein.
23           MR. GOLDSTEIN:  But other than that, I believe you
24   have everything, your Honor.
25           THE COURT:  Okay.

1           Ms. Seymour, is there anything else that I should be
2    looking at, from your point of view?
3           MS. SEYMOUR:  No, your Honor.
4           THE COURT:  Okay.
5           This is a sentence pursuant to a plea agreement, the
6    one I just referenced, in which the parties agreed to a
7    sentence and forfeiture.  On July 9, 2014, the Court accepted,
8    and therefore is bound by, the plea agreement.
9           In the plea agreement, the parties stipulated to a
10   particular calculation of the sentencing guidelines.  I accept
11   their guidelines calculation and find that the offense level is
12   26.  The parties also agreed that under the guidelines and the
13   factors listed under 28, U.S.C., Sections 3553 and 3572, the
14   appropriate fine amount is $140 million, representing twice the
15   amount of pecuniary gain to BNPP as a result of the offense
16   conduct.  And that is a quote from the plea agreement.
17          I should also put on the record what the maximum
18   penalty for the crime is; and that is, $140 million, the same
19   amount, fine, and five years' probation.  There's also
20   mandatory special assessment of $400.
21          In the plea agreement, BNPP also admitted the
22   forfeiture allegation, which means that it agreed to forfeit
23   the amount of proceeds traceable to the criminal offense, which
24   the parties have agreed is $8,833,600,000.
25          Before I impose sentence, does the government wish to

Case 1:15-cv-02010-JDB   Document 13-6   Filed 01/29/16   Page 7 of 16

6
F51KBNPS                       Sentence

1  be heard with respect to sentencing?
2           MR. GOLDSTEIN:  No, your Honor.
3           THE COURT:  Okay.
4           Does defense counsel wish to be heard?
5           MS. SEYMOUR:  Your Honor, very briefly --
6           THE COURT:  Could you pull the mic close to the edge
7  of the table and speak into it.
8           MS. SEYMOUR:  Sure.
9           Your Honor, very briefly, BNPP has taken the lessons
10 to heart from this case.  And if your Court would allow,
11 Mr. Dirani would like to make a very brief statement, your
12 Honor.
13          THE COURT:  I was going to invite Mr. Dirani next, so,
14 Mr. Dirani, I'd be happy to hear you now.
15          MR. DIRANI:  Thank you, your Honor.
16          I appreciate the opportunity to address the Court on
17 behalf of BNP Paribas.
18          THE COURT:  That's fine.  Take as much as time as you
19 like.
20          MR. DIRANI:  BNP Paribas accepts full responsibility
21 for its conduct.  In the roughly ten months since the guilty
22 plea, the organization has taken many steps, and continues to
23 take steps, to strengthen its compliance and controls.
24          The commitment to compliance has been driven by our
25 CEO, who has personally overseen many of these efforts.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    The transformation of the organization and its culture
2    has been dramatic. There is no question that the organization
3    today would not tolerate the kind of behavior we have seen in
4    this case, and BNPP is determined to do what it can to ensure
5    that we do not fall below the high standards of responsible
6    conduct by which we seek to operate.
7        Thank you, your Honor.
8        THE COURT: Okay. Thank you.
9        I will now state the sentence I intend to impose, but
10   the attorneys will have a final opportunity to make any legal
11   objections before the sentence is final.
12       Mr. Dirani, would you please rise.
13       After assessing the particular facts of this case, the
14   factors under Section 3553 and Section 3572, and the
15   court-approved plea agreement, it is the judgment of the Court
16   that BNPP is sentenced to pay a fine in the amount of
17   $140 million and serve a term of five years' probation.
18       I will enter a separate order of forfeiture in the
19   amount of 8,833,600,000, which represents the full amount that
20   BNPP unlawfully moved through the U.S. financial system during
21   the course of the criminal conspiracy. This amount is subject
22   to the following credits for amounts paid by BNPP to settle
23   other actions: 2,243,400,000 to the New York County District
24   Attorney's Office; 508 million to the Federal Reserve;
25   2,243,400,000 to the New York State Department of Financial

1  Services; which leaves a net amount owing of 3,838,800,000.
2        I am also imposing a mandatory special assessment of
3  $400, which shall be due immediately.
4        I am also imposing the following conditions of
5  probation.  There are three:  First, that the defendant not
6  commit another state, local or federal crime during the
7  probation term; two, that the defendant enhance its compliance
8  policies and procedures regarding U.S. sanctions laws and
9  regulations in accordance with the settlement agreements it's
10 entered into with the Federal Reserve and the New York
11 Department of Financial Services; and, finally, that the
12 defendant consent to the imposition of a monitor.
13       Does either counsel know of any legal reason why this
14 sentence should not be imposed as stated?
15       MR. GOLDSTEIN:  No, your Honor.
16       MS. SEYMOUR:  No, your Honor.
17       THE COURT:  Okay.  The sentence as stated imposed.
18       Are there any applications in connection with the
19 sentence?
20       MR. GOLDSTEIN:  Your Honor, the government did want to
21 make one statement on the record with regard to the victims who
22 were in the courtroom --
23       THE COURT:  I didn't realize there were victims in the
24 courtroom.  Okay.
25       Please, I'm required, as we all know, to give victims

1   an opportunity to be heard.  You're speaking on their behalf?
2           MR. GOLDSTEIN:  I am not, your Honor.  And by the term
3   "victim," what I mean is I'm referring to the individuals who
4   you addressed at the outset of this proceeding.
5           THE COURT:  Ah, who were not victims?
6           MR. GOLDSTEIN:  Not victims of this crime.
7           THE COURT:  Okay, fine.  You may be heard on that
8   issue.
9           MR. GOLDSTEIN:  Thank you, your Honor.
10          As your Honor recognized, there are numerous
11  individuals of whom the government is aware who suffered
12  grievous harm at the direction of the regimes in Sudan, Iran
13  and Cuba, which are the regimes that this defendant willfully
14  processed billions of transactions for.
15          As your Honor indicated in denying the restitution
16  request of one such potential claimant, Marilyn Wiederspan, in
17  advance of today's proceeding, under the restitution
18  regulations, we recognize -- and it's quite clear, we
19  believe -- that the victims with whom I have just described or
20  whom I have just described are not victims of this crime and
21  cannot show that they were directly harmed by BNPP's conduct.
22          That said, the government is exploring ways to use the
23  forfeited funds in this proceeding to see if there is an
24  equitable way to distribute funds from this judgment to
25  potential victims of these regimes.  There is authority, we

believe, to at least begin to explore this process under Title 21, United States Code, Section 853(i), which gives the Attorney General the authority to grant petitions for mitigation or remission of forfeiture to restore forfeited property to victims of the violation of this subchapter or to take any other action to protect the rights of innocent persons which is in the interests of justice.

The government believes that the law on regulations that govern remission and restoration are not going to be applicable here for the same reasons that restitution is not applicable, and that there's no direct pecuniary harm to the victims of these regimes tied to BNPP's conduct at issue here. However, we think that there may be a mechanism by which, under Title 21, U.S.C., 853, that there could be some form of compensation.

So the government is going to, starting today, set up a process for individuals who are harmed or who were harmed by the regimes in Sudan, Iran or Cuba, to submit information to the Department of Justice so that the department can evaluate whether it would be possible to provide compensation to the victims of these regimes in a fair and equitable way through the forfeiture in this case.

My colleague Jennifer Ambuehl, from the Department of Justice, can very briefly describe for the Court how that process is going to work as of right now, if the Court will

1  allow it.
2         THE COURT: Okay, I will allow it. And the
3  description, of course, is not so much for me, since I have the
4  legal constraints that I referenced and that you referenced --
5  there is no legal remedy that I can provide these unfortunate
6  people here -- but to the extent there is something the
7  government can do, I'm sure they would like to hear about that
8  and particularly like to hear how they will find out about it
9  as we progress and how they can participate.
10         So I'd be delighted to hear from you, Ms. Ambuehl.
11         MS. AMBUEHL: Thank you, your Honor. And I appreciate
12  the opportunity to speak at sentencing. I think it's one of
13  the best ways that we can get information out to this class of
14  individuals very quickly.
15         So, in order to support the collection of information,
16  the government has set up a website which will be live shortly
17  after this sentencing, and it can be found at www.usvbnpp.com.
18  And that will permit, this website will permit, individuals or
19  their representatives to submit information to the government
20  regarding the nature and the value of the harm they used based
21  on these sanctioned regimes, Sudan, Cuba and Iran. This
22  website and the relevant phone numbers associated with this
23  website that will provide relevant information should go live
24  shortly after sentencing.
25         The government intends to use this information

1   collected to better understand the classes of individuals that
2   could be awarded compensation, to evaluate the information and
3   documentation that would be required of claimants, and to set
4   up an equitable system of evaluating any potential future
5   claims.
6            Although there are practical and policy considerations
7   that impact whether this money can be fairly and responsibly
8   distributed to victims of these regimes, we are committed to
9   attempting to compensate individuals, and this information will
10  be invaluable to helping the government assess whether that is
11  possible here.
12           As I mentioned -- and I will just repeat for those in
13  the audience -- the website is www.usvbnpp.com.  And on this
14  website we provide in easy-to-read format details about what
15  information the victims should submit at a very basic level.
16  We are asking individuals harmed by these governments to
17  provide us with their contact information.  We also ask them to
18  describe the nature and the value of the harm that they
19  suffered.  We ask them when and where the harm occurred.  We
20  also ask them for general descriptions of documentation
21  available regarding the harm.
22           The government is primarily seeking information from
23  individuals harmed by these regimes during the course of BNPP's
24  conspiracy.  However, if an individual's harm occurred outside
25  of this time frame, we are requesting that they still submit

1  information but also include a short explanation why we should
2  consider their harm, and the form will have a box for them.
3         Similarly, because we are using this information to
4  determine whether a claims process is appropriate and what the
5  requirements of any future claims process should be, we also
6  ask that the individual describe the type of documents that
7  they have to substantiate their injury but do not request that
8  they submit any documentation at this time.
9         We have attempted to make the form accessible and to
10 minimize the burden on the individuals submitting the
11 information.  And submitting their information does not mean
12 that they will ultimately be entitled to any of these monies.
13        We're providing a 90-day period for which individuals
14 can submit this information.
15        Once the information is received, the government will
16 analyze it, along with other information it possesses, to
17 better understand whether there is a class of victims that
18 should be compensated from these funds.  Only at that point
19 would the government start any formal claims process.
20        THE COURT:  Do you have any expectation of when that
21 might be?
22        MS. AMBUEHL:  When what might be?  The --
23        THE COURT:  I understand there's a 90-day period day
24 to collect information and then there's an analysis period, at
25 the end of which you make a decision about what to do.  And the

question most people would be interested in is:  When might that decision be made?

            MS. AMBUEHL:  Your Honor, I think that's highly dependent upon the information we receive through this process. There may be a very clear answer that arises from this data, but it's too soon to tell how we will be able to analyze that and in what time frame.

            THE COURT:  Okay.

            MS. AMBUEHL:  However --

            THE COURT:  As long as I have interrupted you, let me just clarify:  So one of the things that you said is that although you would like to focus on people who suffered their injuries during the conspiracy period, you'd also consider injuries outside the conspiracy period.  And so I understand it, that the period during the conspiracy that's at issue in this case is from around 2004 up to including 2012; is that right?

            MS. AMBUEHL:  That's correct, your Honor.

            THE COURT:  All right, sorry I interrupted.  Go ahead.

            MS. AMBUEHL:  No, that's perfectly all right.  And it helps explain things to those in the audience also.

            I would like to say that even though we don't know what time frame we would be able to start this claims process in, the contact information we are soliciting will help us to provide those individuals with updates as the process proceeds.

1    THE COURT:  Okay.

2    MS. AMBUEHL:  This request for information is an
3    unprecedented step, but in light of the unprecedented nature of
4    the BNPP's criminal conspiracy and the resulting forfeiture,
5    the government believes it is important to set up a process
6    that will ultimately lead to the compensation of individuals
7    who have suffered harm at the hands of these regimes that
8    benefited from BNPP's conduct in this case.

9    THE COURT:  Okay.  Thank you very much.
10   I have one more statement, and that is to BNPP:  You
11   may have the right to appeal your conviction and sentence
12   subject to the terms of the plea agreement.  Your notice of
13   appeal must be filed within 14 days of the judgment of
14   conviction.

15   Is there anything else that I need to address from
16   either counsel at this time?

17   MR. GOLDSTEIN:  Not from the government, your Honor.
18   MS. SEYMOUR:  No, your Honor.
19   THE COURT:  Thank you very much.
20   (Adjourned)
21
22
23
24
25